# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Thomas Sheppard,
     Petitioner,

    vs.
                             Case No. 1:08cv298
                             (Spiegel, S.J.; Black, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The case is before the Court on the petition, respondent's return of writ with exhibits, and petitioner's "traverse" in response to the return of writ. (Docs. 3, 11, 16).

### Procedural Background

On September 9, 2005, the Hamilton County, Ohio, grand jury returned a five-count indictment charging petitioner with aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1), aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(3), kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2), theft of a motor vehicle in violation of Ohio Rev. Code § 2913.02(A)(1), and receiving stolen property in violation of Ohio Rev. Code § 2913.51(A).  (Doc. 11, Ex. 1).

On the first day of trial before a jury, petitioner requested that "he be granted a continuance to bring in some witnesses," as well as "new counsel."  (*Id.,* Ex. 28, Tr. 4-18).  Both requests were denied.  (*Id.,* Tr. 15, 19-20).  On January 9, 2006, after hearing all the evidence presented at trial, the jury acquitted petitioner of the aggravated robbery count, but found him guilty of the four remaining charges.  (*Id.,* Ex. 31, Tr. 588-89).  On January 11, 2006, petitioner was sentenced to an aggregate

prison term of 15 years.[1]  (*Id.,* Ex. 3).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising five assignments of error:[2]

1.  "The trial court erred to the prejudice of Defendant-Appellant in sentencing him on Counts 1 and 3," which "should have been merged as offenses of a similar import."

2.  "The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated burglary, kidnapping, theft, and receiving stolen property, as those findings were not supported by sufficient evidence."

3.  "The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated burglary, kidnapping, theft, and receiving stolen property, as those findings were contrary to law" and "against the manifest weight of the evidence."

4.  "The trial court erred to the prejudice of the Defendant-Appellant by overruling his motion for continuance and motion for new counsel."

5.  "The trial court erred to the prejudice of the Defendant-Appellant by sentencing him to consecutive sentences," which "totaled more than the maximum sentence of the most serious charge."

(*Id.,* Ex. 7).

On January 5, 2007, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.  (*Id.,* Ex. 9).  In its decision, the state appellate court made the following factual findings, which are presumed correct

---

[1]  Specifically, petitioner was sentenced to consecutive terms of imprisonment of eight years for the aggravated burglary offense and seven years for the kidnapping offense, to be served concurrently with concurrent 18 month prison terms for the theft-of-a-motor-vehicle and receiving-stolen-property offenses.  (*See* Doc. 11, Ex. 3).

[2]  It is noted that petitioner also filed a second *pro se* notice of appeal, which was consolidated with the appeal initiated by counsel.  (*See* Doc. 11, Exs. 5-6).

under 28 U.S.C. § 2254(e)(1),[3] based on the evidence presented at trial, regarding the incident that resulted in petitioner's convictions and sentence:

> At trial, Gary Becker testified that he and Sheppard were acquaintances. According to Becker, Sheppard had cut his grass on a few occasions, and Becker had given Sheppard and his wife rides for various errands. On September 1, 2005, at 7:00 a.m., Sheppard and another man came to Becker's door, asking to use his telephone. After Becker let Sheppard into his house, Becker was tackled from behind. Sheppard and the other man, who went by the name Mouse, tied Becker's hands and dragged him into the basement. He was seated in a chair, and his feet were bound. Becker estimated that the men had remained in the house for at least two hours. Then, he was hit on his head twice. After he lay on the ground for a few minutes, he was able to untie himself and to sneak out of the basement. Becker testified that the men had taken his van and some possessions from his house. Two days later, Sheppard was arrested while sleeping in Becker's van.

(*Id.,* p. 2).

Petitioner's counsel next filed a timely appeal to the Supreme Court of Ohio, asserting as propositions of law the same claims of error that had been raised on direct appeal to the Ohio Court of Appeals. (*See id.,* Exs. 10, 11). On May 2, 2007, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 13).

In the meantime, on April 4, 2007, while the appeal filed by counsel was pending before the state supreme court, petitioner filed a timely *pro se* application for reopening of the direct appeal under Ohio R. App. P. 26(B) with the Ohio Court of Appeals. (*Id.,* Ex. 17). Petitioner alleged in the application that his appellate counsel was ineffective for not presenting the assignments of error that were raised

---

[3] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

on direct appeal as federal constitutional claims, and by failing to assert the following additional claims on direct appeal:

> 1.  Prosecutorial misconduct resulted in the denial of a fair trial ... in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

> 2.  Denial of right to full and fair discovery in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

> 3.  Denial of right to effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, where trial counsel failed to advance alibi defense.

> 4. ...[I]neffective assistance of trial counsel, where trial counsel failed to object and challenge the racially discriminatory pattern of peremptory challenges made by the State in violation [of] the Sixth and Fourteenth Amendments to the United States Constitution.

> 5.  Denial of fundamental right to be given due notice of the charges faced, and to have factors that enhance penalty beyond statutory maximum proven to a jury beyond a reasonable doubt, as guaranteed by the Due Process and Equal Protection Clauses of the United States Constitution.

(*Id.,* Ex. 17).

On May 11, 2007, the Ohio Court of Appeals denied the reopening application. (*Id.,* Ex. 19). The court reasoned that petitioner's appellate counsel was not ineffective in failing to raise the following claims of error, which were instead appropriately addressed in a post-conviction proceeding because they depended "for their resolution on evidence outside the record:" petitioner's claims "challenging (1) the state's failure to provide, and his trial counsel's effectiveness in failing to secure, 'full and fair discovery,' (2) his trial counsel's effectiveness in investigating and presenting at trial his alibi defense, and (3) his trial counsel's effectiveness in failing to object to the state's exercise of peremptory challenges to exclude African Americans from his jury." (*Id.,* p. 1). The court further concluded that petitioner's remaining claims, challenging the imposition of non-minimum

sentences and the "various instances of prosecutorial misconduct and his trial counsel's failure to object to them," were barred from review under the doctrine of *res judicata* because they "present matters that may be raised in Sheppard's appeal to the Ohio Supreme Court." (*Id.,* p.2).

Petitioner perfected a timely appeal to the Supreme Court of Ohio, raising the same claims of error that had been presented in his reopening application as propositions of law. (*See id.,* Exs. 22-23). On August 29, 2007, the state supreme court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 24).

Finally, on August 25, 2006, while his direct appeal was pending before the Ohio Court of Appeals, petitioner filed a *pro se* petition for post-conviction relief in the Hamilton County Common Pleas Court. (*Id.,* Ex. 14). In this petition, petitioner claimed that his trial counsel provided ineffective assistance by refusing "to interview and subpoena a series of witnesses who would have established an alibi for Defendant and who further would have demonstrated the lack of credibility of the complaining witness." (*Id.,* p. 3).

On September 5, 2006, the common pleas court denied the petition, finding and reasoning in pertinent part as follows:

> ....The Court finds that Sheppard's trial counsel was effective and finds that any thing that may appear to be a deficiency in trial counsel's performance is directly attributable to the defendant's refusal to cooperate with his counsel.
>
> A review of the record indicates that Sheppard may have refused to work with his counsel because he believed the victim would simply drop the matter. Regardless, it was Sheppard who did not inform his counsel of numerous witnesses until the day of trial. It was Sheppard that refused to cooperate with his counsel.
>
> The Court finds that Sheppard's trial counsel was effective under the standards set forth in *Strickland v. Washington*....

(*Id.,* Ex. 16). Apparently, petitioner did not pursue an appeal from this decision in the state courts. (*See id.,* Brief, p. 5 & Ex. 25).

Petitioner commenced the instant habeas corpus action in May 2008. He

alleges eleven grounds for relief:

**Ground One:**  The trial court erred to the prejudice of the Appellant by sentencing him on Counts 1 [aggravated burglary] and 3 [kidnapping], as those should have been merged as offenses of similar import.

**Ground Two:**  The jury erred to the prejudice of the Appellant by finding him guilty of aggravated burglary, kidnapping, theft, and rec[e]iving stolen property, as those findings were not supported by sufficient evidence, and the State failed to meet its burden of proof.

**Ground Three:**  The jury and trial court erred to the prejudice of the Appellant by finding him guilty of [aggravated] burglary, kidnapping, theft, and receiving stolen property, as those findings were contrary to law, and were against the manifest weight of the evidence.

**Ground Four:**  The trial court erred to the prejudice of Appellant by overruling his motion for a continuance and new counsel, as it was the first[] such request and resulted in the ineffective assistance of counsel.

**Ground Five:**  The trial court erred to the prejudice of Appellant by sentencing him to ... consecutive sentences, which resulted in a sentence totaling more than the maximum sentence for the more serious charge.

**Ground Six:**  Prosecutorial misconduct resulted in the denial of a fair trial ... in violatio[n] of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground Seven:**  Denial of right to full and fair discovery in violation of the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Ground Eight:**  Denial of right to effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution,

where trial counsel failed to examine alibi witnesses.

**Ground Nine:**  Ineffective assistance of appellate counsel for failure to raise claim of ineffective assistance of trial counsel, where trial counsel failed to object and challenge the racially discriminatory pattern [of peremptory] challenges made by the [S]tate in violation of the Sixth and [F]ourteenth Amendments of the United [States] Constitution.

**Ground Ten:**  Denial of fundamental right to be given due notice of the charges and to have factors that enhance penalty beyond statutory maximum proven to a jury beyond a reasonable doubt, as guaranteed by the Due Process and Equal Protection Clauses of the United States Constitution.

**Ground Eleven:**  Ineffective assistance of appellate counsel for failure to raise claims on direct appeal as the United States Constitution claims.

(Doc. 3, pp. 16, 18, 19, 21, 26, 27, 28, 29, 30).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One That His Convictions And Sentences For Aggravated Burglary And Kidnapping Should Have Been Merged

In Ground One of the petition, petitioner alleges that the trial court erred when it imposed consecutive sentences for the aggravated burglary and kidnapping offenses, which he claims are "allied offenses of similar import." (Doc. 3, p. 16).

This claim was raised to the state courts on direct appeal solely as error under Ohio law.  The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the claim's merits, overruled the assignment of error as follows:

R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses

of similar import, *** the defendant may be convicted of only one."
In *State v. Rance,* [710 N.E.2d 699, ¶ 1 of syllabus (Ohio 1999)
(emphasis in original),] the Ohio Supreme Court held "that under an
R.C. 2941.25(A) analysis the statutorily defined elements of offenses
that are claimed to be of similar import are compared *in the abstract*."

Sheppard was convicted of aggravated burglary in violation of R.C.
2911.11(A)(1) and kidnapping in violation of R.C. 2905.01(A)(2).
R.C. 2911.11(A)(1) provides that "[n]o person, by force, stealth, or
deception, shall trespass in an occupied structure or in a separately
secured or separately occupied portion of an occupied structure, when
another person other than an accomplice of the offender is present,
with purpose to commit in the structure or in the separately secured or
separately occupied portion of the structure any criminal offense, if
*** [t]he offender inflicts, or attempts to inflict physical harm on
another."  A person is guilty of kidnapping if he, "by force, threat, or
deception, ... by any means, [removes] another from the place where
the other person is found or [restrains] the liberty of the other person
*** [t]o facilitate the commission of any felony or flight thereafter."
A comparison of the offenses' elements leads us to the conclusion that
aggravated burglary and kidnapping are not allied offenses of similar
import.  It is possible to commit a burglary without moving or
restraining a person.  And conversely, it is possible to kidnap a person
without trespassing into an occupied structure.

Sheppard argues that the Ohio Supreme Court has retreated from its
decision in *Rance*, and that we should use the approach by the court in
*State v. Logan,* [397 N.E.2d 1345 (Ohio 1979),] which focused on a
case-specific review to determine whether two offenses were
committed with a single animus.  But we must determine whether
offenses were committed with a single animus only if the offenses are
otherwise allied and of similar import.  Under R.C. 2941.25(B),
"[w]here the defendant's conduct constitutes two *** offenses of
dissimilar import, or where his conduct results in two *** offenses of
the same or similar kind committed separately or with separate animus
as to each, *** the defendant may be convicted of [both] of them."
Because we have concluded that aggravated burglary and kidnapping
are not allied offenses of similar import, we need not conduct the
analysis set forth in *Logan*....

(Doc. 11, Ex. 9, pp. 3-4) (footnote citations omitted).

As an initial matter, this Court is precluded from reviewing petitioner's claim to the extent petitioner alleges that the trial court erred under Ohio law in failing to merge the two offenses. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). This Court, therefore, only has jurisdiction to consider whether the alleged error violated the petitioner's federal constitutional rights under the Double Jeopardy and Due Process Clauses.

However, as respondent has suggested in the return of writ (*see* Doc. 11, Brief, pp. 14-15), it appears that petitioner may have waived any such constitutional claim because he failed to present the federal issue to the Ohio courts. *See, e.g., McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). In any event, even assuming petitioner had alleged a federal constitutional claim on direct appeal in the state courts, he would not be entitled to habeas relief.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. The Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* 273 Fed.Appx. 480, 484 (6th Cir. Apr. 9, 2008) (not published in Federal Reporter)

(unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989).

Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* 273 Fed.Appx. at 486 (on federal habeas review, "[w]e cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent"). A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8.[4]

In Ohio, the legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999).[5] The statute provides:

---

[4] *See also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82; *Palmer*, 273 Fed.Appx. at 486 (and cases cited therein).

[5] *See also Jones v. Baker,* 35 F.3d 566 (table), Nos. 93-3589, 93-3625, 1994 WL 464191, at **3 (6th Cir. Aug. 26, 1994) (unpublished), *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (table), No. 92-4301, 1994 WL 56933 (6th Cir. Feb. 24, 1994) (unpublished).

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Supreme Court of Ohio has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Rance,* 710 N.E.2d at 636. The applicable test for deciding the issue potentially involves a two-step analysis under the state statute.

First, if the statutory elements of the various crimes, considered "in the abstract" without regard to the particular facts of the case, are found to be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Id.*

If the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See id.; see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997). This determination does not turn on "the presence or absence of any specific factors," but rather is based on the particular facts of each case as gleaned from the record. *Jones,* 676 N.E.2d at 81-82.

In this case, the Ohio Court of Appeals concluded that aggravated burglary and kidnapping offenses are of dissimilar import under the first level of the *Rance* inquiry. Although this Court is bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction," *see Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle,* 502 U.S. at 67-68, and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)), the highest court of the state is the

final arbiter of this state-law issue; and when the state's highest court "has spoken, its pronouncement is to be accepted by federal courts as defining state law." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case).

The undersigned is aware that the Supreme Court of Ohio issued a decision after petitioner's direct appeal concluded expressly rejecting the First District Court of Appeals' approach, which involved the use of a "strict textual comparison" of the elements in determining whether offenses are of similar or dissimilar import under *Rance*. *See State v. Cabrales,* 886 N.E.2d 181, 186 (Ohio 2008). Specifically, in *Cabrales,* the state supreme court held that *Rance* has been misinterpreted to require a "'strict textual comparison' of elements under R.C. 2941.25(A)," so that "only where the offenses exactly overlap are they allied offenses of similar import." *Id.* (disagreeing with this approach enunciated by the First District Court of Appeals in *State v. Palmer,* 772 N.E.2d 726 (Ohio Ct. App. 1 Dist. 2002)). The court held that, instead, "*Rance* requires courts to compare the elements in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements." *Id.* at 188. Under this more flexible standard, "if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *Id.*

In so ruling, however, the *Cabrales* court did not overrule prior state supreme court precedents definitively holding that aggravated burglary and kidnapping offenses are not allied offenses of similar import when viewed in the abstract. *See, e.g., State v. Waddy,* 588 N.E.2d 819, 837 (Ohio), *cert. denied,* 506 U.S. 921 (1992) (reasoning that "aggravated burglary is not implicit within kidnapping" and "kidnapping is not implicit within aggravated burglary," because "burglary does not inherently require the victim's restraint ... [n]or does inflicting physical harm, as required for aggravated burglary under R.C. 2911.11(A)(1), necessarily require the victim's restraint");[6] *see also State v. Monroe,* 827 N.E.2d 285, 299 (Ohio 2005); *State v. Reynolds,* 687 N.E.2d 1358, 1371 (Ohio), *cert.*

---

[6] *Waddy* was superseded on other grounds by state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,* 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

*denied,* 524 U.S. 930 (1998).[7]

This Court must defer to the Supreme Court of Ohio's clear pronouncement that as a matter of state statutory law, aggravated burglary and kidnapping are not allied offenses of similar import. It, therefore, appears that as the Ohio Court of Appeals reasonably concluded, the aggravated burglary and kidnapping offenses are not subject to merger as allied offenses under the first prong of the *Rance* test. Petitioner's convictions and sentences for both offenses thus do not trigger concerns that petitioner was subjected to "multiple punishment" proscribed by the Constitution's Double Jeopardy Clause.

In any event, even assuming the second level of inquiry under *Rance* were triggered here, the undersigned finds that as a factual matter, the offenses were committed separately or with a separate animus. Here, as in *Waddy* and *Reynolds,* the restraints imposed on the victim were not merely incidental to the underlying aggravated burglary offense, but instead involved a separate animus to the extent that the petitioner's hands and feet were bound and petitioner was dragged down to the basement and forced to sit there tied up for at least two hours while the intruders remained in his house. *Cf. Reynolds,* 687 N.E.2d at 1371; *Waddy,* 588 N.E.2d at 837.[8]

Accordingly, in sum, petitioner is not entitled to habeas relief based on the claim alleged in Ground One challenging his convictions and consecutive sentences for aggravated burglary and kidnapping. To the extent petitioner alleges error under state law, his claim is not cognizable in this proceeding. Moreover, petitioner's allegations do not trigger concerns under the Constitution's Double Jeopardy and Due Process Clauses.

## B. Petitioner Is Not Entitled To Relief Based On The Sufficiency Of Evidence

---

[7] *Cf. Wogenstahl v. Mitchell,* No. 1:99cv843, 2007 WL 2688423, at *1, 80-81 (S.D. Ohio Sept. 12, 2007) (Rose, J.; Merz, M.J.) (unpublished) (holding that the state trial court did not err when it failed to merge aggravated burglary and kidnapping specifications to an aggravated murder charge, because "[a]ggravated burglary is not implicit within kidnaping nor is kidnaping implicit within burglary" given that "[b]urglary does not involve the moving of a person from one place to another" and "[k]idnaping does not necessarily involve trespassing in an occupied structure by force, stealth, or deception").

[8] *See also Parker v. Bobby,* No. 4:06cv2695, 2007 WL 3340047, at *1, 9-10 (N.D. Ohio Nov. 6, 2007) (Aldrich, J.; Perelman, M.J.) (unpublished) (kidnapping offense was committed with a separate animus from the underlying rape offense, where the victim was choked and forced from the TV room to an upstairs bedroom against her will and was told that children in her care would be killed if she left the bedroom).

**Claim Alleged In Ground Two; And The Manifest-Weight-Of-The-Evidence Claim Alleged In Ground Three Is Not Cognizable In This Proceeding**

In Ground Two of the petition, petitioner alleges that his convictions are not supported by sufficient evidence. In Ground Three, he claims that the jury's verdicts of guilt are against the manifest weight of the evidence. (Doc. 3, pp. 18-19).

As an initial matter, as respondent has argued in the return of writ (*see* Doc. 11, Brief, pp. 22-23), the claim alleged in Ground Three is not cognizable in this federal habeas proceeding. As discussed above, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41 (1984); *see also Estelle,* 502 U.S. at 67-68; *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Petitioner's manifest-weight-of-the-evidence claim raises an issue of state-law only. *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997).[9] Therefore, only petitioner's sufficiency of evidence claim alleged in Ground Two triggers a due process issue subject to review on the merits herein.

In this case, the Ohio Court of Appeals was the only state court to address the merits of the federal due process claim challenging the sufficiency of evidence. Citing only state case-law, the court summarily overruled petitioner's claim of error as follows:

> Sheppard argues that the evidence of the offenses was insufficient because Becker was the only witness. According to Sheppard, Becker's testimony was not credible. But the state presented sufficient evidence of each of the offenses....

---

[9] As noted above with respect to the Supreme Court of Ohio's decision in *Waddy, see supra* p. 12 n.6, *Thompkins* was superseded on other grounds by state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,* 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

(Doc. 11, Ex. 9, pp. 4-5) (footnote to state case citation omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir.

2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals did not identify or discuss the standard of review governing the resolution of sufficiency of evidence claims, which was established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979). Because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *see In Re Winship,* 397 U.S. 358, 363-64 (1970), when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Petitioner was convicted in this case of aggravated burglary, kidnapping, theft of a motor vehicle, and receiving stolen property. Sufficient evidence was presented at trial to establish petitioner's guilt beyond a reasonable doubt for each of these offenses under the applicable standard of review enunciated in *Jackson*.

First, to establish petitioner's guilt for aggravated burglary under Ohio Rev.

Code § 2911.11(A)(1), the State was required to prove beyond a reasonable doubt that petitioner "by force, stealth, or deception," trespassed in an occupied structure, when another person other than an accomplice of petitioner was present, "with purpose to commit in the structure ... any criminal offense," and inflicted, or attempted or threatened to inflict, physical harm on another. The undersigned agrees with the Ohio Court of Appeals' determination that sufficient evidence was presented at trial to establish each element of the aggravated burglary offense.

Specifically, the victim, Gary Becker, testified that on September 1, 2005, around 7:00 a.m., petitioner came to Becker's house asking to use the telephone; when Becker went to retrieve the phone from inside the house, he was "tackled from behind" and fell to the ground. (Doc. 11, Ex. 29, Tr. 281). Becker testified that after he was restrained and taken to the basement, petitioner went upstairs and demanded to know where Becker kept his guns. (*Id.,* Tr. 282). While Becker was "tied up in the basement," petitioner also "took [Becker's] van out and left [the] house for a period of time." (*Id.,* Tr. 285). Becker testified further that "at a later point in time after maybe two hours or so," petitioner "came downstairs and cracked a board over the back of my head from behind. He hit me twice with it." (*Id.,* Tr. 286).

When Becker finally escaped from the house, he discovered his van was missing, as well as "[t]wo modern pistols, some custom made knives ..., a vial of pain medication, ... [and] other miscellaneous things," including cash and credit cards from his wallet and a jar containing loose change. (*Id.,* Tr. 303). Becker also saw that the "whole house had been gone through," left in a "mess" with "muzzle loading rifles and modern rifles ... lined up in the living room ..., drawers ... opened," clothes and boxes of bandages strewn around his bedroom, and "half eaten food" lying around. (*See id.,* Tr. 296-99). Becker's van was found by the police two days later, on September 3 at 4:40 a.m., parked near the woods with petitioner sleeping inside of it in the driver's seat. (*Id.,* Tr. 402-05).

Becker testified that he suffered a headache and a "big lump" on his head from being hit on the head, which he had checked a "couple of days later" at University Hospital's emergency room. (*Id.,* Tr. 337-38). Moreover, photographs were taken of Becker soon after police arrived at the scene in response to Becker's 911 call, which revealed that Becker, who was "bleeding on both forearms" and knee, had been injured. (*See id.,* Tr. 292, 378).

Viewing all of this evidence in the light most favorable to the prosecution, a rational juror could infer that petitioner committed an aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1).

Second, to establish petitioner's guilt for kidnapping under Ohio Rev. Code § 2905.01(A)(2), the State was required to prove beyond a reasonable doubt that petitioner "by force, threat, or deception," removed "another from the place where the other person [was] found or restrain[ed] the liberty of the other person," for the purpose of "facilitat[ing] the commission of any felony or flight thereafter." A rational juror could find petitioner guilty of all elements of this offense based on Becker's testimony that after petitioner entered his house and tackled him to the ground, petitioner tied Becker's hands behind his back and dragged Becker downstairs to the basement, where Becker remained tied to a chair for over two hours while petitioner and petitioner's accomplice ransacked Becker's home and absconded with Becker's van.

Finally, sufficient evidence was presented to establish petitioner's guilt for theft of a motor vehicle under Ohio Rev. Code § 2913.02(A)(1) and receiving stolen property under Ohio Rev. Code § 2913.51(A). A person is guilty of theft under Ohio Rev. Code § 2913.02(A)(1) if he, "with purpose to deprive the owner of property" knowingly obtains or exerts control over the property without the consent of the owner. A person is guilty of receiving stolen property under Ohio Rev. Code § 2913.51(A) if he "receive[s], retain[s], or dispose[s] of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense."

Here, a rational juror could infer from Becker's testimony regarding the break-in that occurred at his home on September 1, 2005, as well as the testimony of the police officer who discovered Becker's missing van two days later with petitioner sleeping in it, that (1) petitioner, with purpose to deprive Becker of property, knowingly obtained and exerted control over a motor vehicle owned by Becker without Becker's consent in violation of Ohio Rev. Code § 2913.02(A)(1); and (2) petitioner received or retained Becker's van knowing that it was obtained through the commission of a theft offense in violation of Ohio Rev. Code § 2913.51(A).

Petitioner contends in his "traverse" brief that he could not be found guilty of aggravated burglary, kidnapping, theft, and receiving stolen property because he was acquitted of aggravated robbery, which was "at the core of this case" and was

18

"the motive behind entering Mr. Becker's home in the first place." (Doc. 16, p. 13). To establish the charged aggravated robbery offense under Ohio Rev. Code § 2911.01(A)(3), the State was required to prove beyond a reasonable doubt that petitioner inflicted or attempted to inflict "*serious* physical harm on another" while attempting or committing a theft offense or fleeing immediately after the attempt or offense. (Emphasis in original). A rational juror could have acquitted petitioner on that charge while finding him guilty of the other offenses, including aggravated burglary under Ohio Rev. Code § 2911.11(A)(1), which only required a showing that the "offender inflict[ed] or attempt[ed] or threaten[ed] to inflict physical harm on another."

Petitioner also contends that the evidence is insufficient to support his convictions because the "alleged victim was the only witness, and his testimony was dubious at best." (Doc. 16, p. 15). Under *Jackson,* however, it is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *See Jackson,* 443 U.S. at 319. Consequently, this Court is precluded from resolving credibility issues other than in the prosecution's favor.

Accordingly, in sum, petitioner is not entitled to relief based on the claims alleged in Grounds Two and Three of the petition because (1) the manifest-weight-of-the-evidence claim alleged in Ground Three raises an issue of state-law only that is not cognizable in this proceeding; and (2) under the applicable standard of review enunciated in *Jackson,* the evidence was sufficient to support petitioner's convictions for aggravated burglary, kidnapping, theft and receiving stolen property.

## C. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Four Challenging The Trial Court's Denial Of His Requests Made On The First Day Of Trial For A Continuance And New Counsel

In Ground Four of the petition, petitioner alleges that the trial court erred when it denied his requests for a continuance and new counsel, which were made on the record the first day of trial–January 4, 2006. (Doc. 3, pp. 19-20). Petitioner claims that the denial of these requests effectively deprived him of the effective assistance of counsel. (*Id.*).

This claim was raised on direct appeal to the Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing its merits. Citing only state case-law, the court made findings of fact, which are presumed correct

under 28 U.S.C. § 2254(e)(1),[10] and ruled in relevant part as follows:

> We review the trial court's denial of Sheppard's motion for a continuance under an abuse-of-discretion standard. Sheppard requested a continuance on the day of trial. He stated that he wanted the continuance to secure the attendance of some witnesses, including his wife. Sheppard was unable to tell the court why his wife was not in court on the day of trial, and he was not sure whether she was going to testify. He did not explain why he had not subpoenaed his other witnesses prior to the day of trial. Sheppard also stated, "I just need a little time to get to–pretty much get it together as far as the trial. I wasn't expecting it to go this far. I really wasn't." Apparently, Sheppard did not believe that the case would proceed against him, because he and Becker had been friends.

> The state argued that its witnesses were all present for the trial, and that a continuance would have been a hardship for Becker, who had physical problems. We conclude that the trial court did not abuse its discretion when it denied Sheppard's motion for a continuance.

> The denial of a defendant's motion for new counsel amounts to a denial of the effective assistance of counsel if the defendant demonstrates "good cause [for new counsel], such as conflict of interest, a complete breakdown of communication, or an irreconcilable conflict." Sheppard did not demonstrate good cause. Absent such a showing, we review the trial court's decision under an abuse-of-discretion standard. Given that Sheppard requested new counsel only after his motion for a continuance had been denied, his motion was likely a dilatory tactic. We conclude that the trial court did not abuse its discretion when it denied the motion....

(Doc. 11, Ex. 9, pp. 5-6) (footnote citations to state cases omitted).

As an initial matter, to the extent that petitioner asserts that the trial court erred under state law in denying his requests for a continuance and new counsel,

---

[10] *See supra* p. 3 n.3.

his claim is not cognizable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). To the extent petitioner alleges a federal constitutional violation, the undersigned will address the trial court's challenged rulings separately.

1. Denial of Motion for Continuance.

The Constitution guarantees to criminal defendants a "meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984); *see also Mackey v. Dutton,* 217 F.3d 399, 407 (6th Cir. 2000) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.") (quoting *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973)), *cert. denied,* 531 U.S. 1087 (2001).

The right to present a defense, however, may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process," *United States v. Scheffer,* 523 U.S. 303, 308 (1998), and "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel," *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In *Morris,* the Supreme Court stated:

> Trial judges require a great deal of latitude in scheduling trials. Not the least of their problems is assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris,* 461 U.S. at 11-12 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)); *see also Foley v. Parker,* 488 F.3d 377, 389 (6th Cir. 2007) ("Denial of a continuance rises to the level of a constitutional violation only if it is so arbitrary as to violate due process."), *cert. denied,* 128 S.Ct. 2507 (2008).

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar,* 376 U.S. at 589. Rather, the

"answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*

The Sixth Circuit has considered the following factors in determining whether a criminal defendant was denied due process by the denial of a motion for continuance: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Mackey,* 217 F.3d at 408 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981)). Courts (including the Sixth Circuit) have cited additional factors to be considered, such as the length of the requested delay; whether other continuances were requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay was for legitimate reasons; whether the defendant contributed to the circumstance which gave rise to the request for a continuance; the complexity of the case; and whether the denial of a continuance resulted in identifiable prejudice to the defendant's case. *See, e.g., Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir. 1985) (and cases cited therein).

Because "[n]o absolute rule can be articulated as to the minimum amount of time required for an adequate preparation for trial of a criminal case," in order to obtain relief, the defendant must demonstrate that the denial of a continuance resulted in prejudice or, conversely, that a continuance would have added something to the defense. *Montgomery v. Bagley,* 482 F.Supp.2d 919, 959-60 (N.D. Ohio 2007) (citing and quoting *United States v. Faulkner,* 538 F.2d 724, 729-30 (6th Cir.), *cert. denied,* 429 U.S. 1023 (1976)); *see also Foley,* 488 F.3d at 389 (holding that the petitioner must demonstrate that the denial of a continuance actually prejudiced the defense); *United States v. Moreno,* 933 F.2d 362, 371 (6th Cir.) (same), *cert. denied,* 502 U.S. 895 (1991).

In this case, the undersigned concludes that the trial court's denial of petitioner's motion for continuance was neither unreasonable nor arbitrary and thus did not rise to the level of a due process violation.

In support of his motion for continuance, petitioner stated only that his wife, who had been out of town for a couple of months, and two other men "would come

to testify on my behalf." (Doc. 11, Ex. 28, Tr. 5). However, it appears from the record that petitioner was not diligent about letting his counsel or the court know of the existence of these potential defense witnesses, and in fact, waited until the first day of trial to bring the matter to their attention. (*See id.,* Tr. 4-5). Moreover, when questioned more closely by the court, petitioner could not explain why his wife was not available that day to testify on his behalf and said "[a]fter she got back about a couple of days ago, ... I really wasn't going to use her as a witness ... because I didn't think this was going to go this far." (*Id.,* Tr. 5-6). Petitioner also was unable to identify his other witnesses, whom he claimed were "friends," except to say that one was "John ... from the street" and the other was "Tony Brisco." (*Id.,* Tr. 7-8). Petitioner did not relay to the court the substance of any of the witnesses' potentially favorable testimony, and even indicated that he had yet to contact the witnesses. (*Se id.,* Tr. 8).

Petitioner conceded that he "had the ability" to contact the witnesses before the trial commenced, but had not expected "it to go this far" because he and the victim were "pretty good buddies." (*Id.,* Tr. 9). Petitioner's counsel stated that petitioner had never given him the names of the witnesses and that he was unsure whether "I'm going to be able to track these guys down." (*Id.,* Tr. 10). Counsel stated further: "[S]urely had he given me these names earlier I would do my best to track these people down." (*Id.*).

On the other hand, the prosecutor expressed his opposition to petitioner's request for a continuance because the victim had "significant medical issues" and was "worrie[d] that there could be some sort of retaliation" given that the prosecution was "for serious crimes where significant prison sentences are involved." (*Id.*, Tr. 11-12). In addition, there were several witnesses, including the victim and seven police officers, who had traveled to the courthouse and were present and ready to testify for the State. (*Id.,* Tr. 12). The case had been pending for months by that time, with a prior continuance of the trial date allowed at the State's request because the victim "had to undergo some type of very serious surgery" at that time. (*See id.,* Tr. 14).

The trial court weighed all of these factors in denying petitioner's request for continuance. The court stated:

As I go through these specific factors, and hearing what I've heard today, the defendant is asking for a continuance, basically, because his

wife, who has been in town, is not necessarily coming to court or been notified to come to court ..., and a couple of friends, a John from the street, and a Tony Brisco, who could have been certainly notified to be here today, and but for the nonactions of the defendant, they are not here today....

There has been another continuance granted....

There is certainly inconvenience to these police officers, that I know have been here at least a couple of times now, have sat here all morning today.  There are seven police officers....  They are certainly inconvenienced.

The Court, I don't know that I'm necessarily inconvenienced, but we were ready to go, there [are] jurors that are here that are ready to go, there is a victim that is ready to go, and the request to delay just, in my opinion, based upon everything that's before me, [is] not a legitimate reason to continue the case, and but for the defendant's actions or nonactions again, this case would be ready to go.

(*Id.,* Tr. 13-15).

Upon review of the trial record, and particularly the vague, unsubstantiated and non-compelling reasons presented by petitioner to the trial court for granting a continuance at such a late juncture in the proceedings, *see Ungar,* 376 U.S. at 589. the undersigned finds that the trial court's ruling denying petitioner's request was reasonable and certainly was not so arbitrary as to amount to a violation of due process.

2.  Denial of Motion for New Counsel.

Immediately after the trial court denied petitioner's request for a continuance, petitioner's counsel relayed petitioner's next request for new counsel. (*See* Doc. 11, Ex. 28, Tr. 16).  Counsel stated:

Our relationship is, a good way to put it, I've been given the information in pieces, that has made it very difficult for me to represent him.  We don't scream and yell at each other, but we're

definitely not on the same page as to how to handle the case.

And as recently as going through the jury questionnaires in deciding whether we're going to put him on the stand or not, I've had to change my position two or three times based on what he's told me, which is probably things that could have happened a long time ago and haven't.

(*Id.*).

The prosecutor added that defense counsel had made it clear "to the Court and myself, that his client was counting on the victim not showing up today, and as a result of that, he ... just now today ... received information pertaining to witnesses.  He's been giv[en] conflicting information about how to defend the case, which has changed his position."  (*Id.,* Tr. 17-18).  The prosecutor further stated: "This is the second trial date.  The defendant knew the case was going to trial.  He has unwisely gambled and chosen to be unprepared today, and that's not [defense counsel's] fault, it's his client's fault."  (*Id.,* Tr. 18).

The trial court overruled petitioner's request for new counsel as follows:

Okay.  Well, you know, here we are, the jury is outside the courtroom here, ... we're all ready to proceed, it's after 12:00.  They have been waiting.  The witnesses are coming back.  Been through the request for continuance, and now I hear that he's, ... spoon feeding you information, not necessarily cooperating as he should.

I can't make anybody cooperate with the Court, the defendant, counsel, or anybody else.  What I can do is ... to make sure that there is a fair trial conducted.

[Defense counsel], obviously, you're very familiar with the facts of this case, you know this case inside and out, we've talked about this on numerous occasions.  You just, in this situation, have to do the best you can with the information that Mr. Sheppard decides to provide to you.

If he doesn't want to cooperate with you, that's his call.  But the law is

clear, I cited as authority [*Morris v. Slappy,* 461 U.S. 1 (1983),] that
the Sixth Amendment does not guarantee a meaningful relationship
between the accused and his counsel. What it provides is that there is
competent counsel that is ready, able, and competently ready to
proceed, ... with or without the cooperation of the defendant.

There are times when trials must go on, and that's what we're going to
do here.

(*Id.,* Tr. 18-20).

The Sixth Amendment "secures the right to the assistance of counsel, by
appointment if necessary, in a trial for any serious crime." *Wheat v. United States,*
486 U.S. 153, 158 (1988). The Supreme Court has stated that the "purpose of
providing assistance of counsel 'is simply to ensure that criminal defendants
receive a fair trial,' ... and that in evaluating Sixth Amendment claims, 'the
appropriate inquiry focuses on the adversarial process, not on the accused's
relationship with his lawyer as such.'" *Id.* at 159 (quoting *Strickland v.
Washington,* 466 U.S. 668, 689 (1984), and *United States v. Cronic,* 466 U.S. 648,
657 n.21 (1984)). "Thus, while the right to select and be represented by one's
preferred attorney is comprehended by the Sixth Amendment, the essential aim of
the Amendment is to guarantee an effective advocate for each criminal defendant
rather than to ensure that a defendant will inexorably be represented by the lawyer
whom he prefers." *Id.*

In this case, the trial court cited the Supreme Court's decision in *Morris* as
supporting its decision to deny petitioner's motion for new counsel. In *Morris,* the
petitioner's initial attorney was hospitalized shortly before trial, and six days
before the scheduled trial date, a colleague was substituted to represent petitioner
at trial. *Morris,* 461 U.S. at 5. On the first two days of trial, petitioner made
comments complaining about the inadequacy of his new counsel's investigation
and the lack of time for preparation, which the trial court construed as a request for
a continuance; the request was denied. *See id.* at 6-8. On the third day of trial,
petitioner presented the trial court with a petition, claiming that he was
"unrepresented by counsel" and expressing dissatisfaction with his new attorney's
performance. *Id.* at 8. The court treated the petition as a renewed request for a
continuance until petitioner's original attorney could represent him again; the
request was denied. *Id.* At that point, the petitioner announced that he would not

cooperate at the trial, and against counsel's advice, refused to take the stand to testify in his defense. *Id.* at 8-9.

In deciding whether petitioner's Sixth Amendment right to counsel was infringed in those circumstances, the Supreme Court expressly rejected the "novel idea" espoused by the circuit court that the Sixth Amendment right to counsel includes the right to a "*meaningful attorney-client relationship.*" *Morris,* 461 U.S. at 13-14 & n.6 (emphasis in original).[11] Moreover, the Supreme Court held that the trial court was "abundantly justified in denying [the petitioner's] midtrial motion for continuance so as to have [his original attorney] represent him," because "it could reasonably have concluded that [the petitioner's] belated requests to be represented by [the attorney] were not made in good faith but were a transparent ploy for delay." *Id.* at 13.

Although *Morris* was decided in the context of the denial of a request for a continuance, the decision is pertinent to the issue to be addressed herein involving the denial of a request for new counsel. *Cf. Henness v. Bagley,* No. 2:01cv43, 2007 WL 3284930, at *46 (S.D. Ohio Oct. 31, 2007) (unpublished); *see also Charley v. Bagley,* No. 1:03cv1607, 2006 WL 1624240, at *8 (N.D. Ohio June 2, 2006) (unpublished) (denying habeas relief because the Ohio appellate court's application of *Morris* in upholding the trial court's refusal to appoint substitute counsel was reasonable).

As the court stated in *Henness, supra,* 2007 WL 3284930, at *46:

The timing of the request, any delay in the proceedings, and the inconvenience to the trial participants are all factors for a trial court to consider when deciding either a motion for a continuance or a request for new counsel. Not to be ignored, however, is the reason for the request, as *Morris* demonstrates. If the attorney-client relationship is such that the attorney is able to provide competent representation, then the client's dislike of or disagreement with his attorney generally cannot provide a basis for a continuance or appointment of new counsel. Otherwise, a defendant could prolong his trial indefinitely,

---

[11] *Cf. Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25 (1989) (holding that the Sixth Amendment does not entitle indigent defendants to the appointment of counsel of their own choosing).

repeatedly claiming not to trust or be able to work with his attorney, regardless of the attorney's preparedness or willingness and ability to provide competent representation to the client....

Here, neither the trial court's denial of petitioner's request for new counsel nor the Ohio Court of Appeals' decision upholding that ruling are unreasonable under *Morris*.[12] As the state courts understood in addressing this issue, petitioner himself created the situation underlying his request for new counsel by failing to inform his attorney until the start of trial of witnesses that he wanted to call to testify on his behalf, and "that can hardly form the basis for a finding of trial court error." *Cf. Henness,supra,* 2007 WL 3284930, at *46.

In any event, under Sixth Circuit precedents, a motion for new counsel based on one's dissatisfaction with current counsel is "addressed to the sound discretion of the trial court." *United States v. Trujillo,* 376 F.3d 593, 606 (6th Cir. 2004) (quoting *United States v. White,* 451 F.2d 1225, 1226 (6th Cir. 1971) (*per curiam*)). The Sixth Circuit cites four factors to consider in ruling on these motions: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the matter; (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *Id.* (and cases cited therein).

In this case, petitioner's request for new counsel made on the first day of trial, after the initial trial date had been continued, was untimely. *See, e.g., Bailey v. Trombley,* No. 05-10190, 2008 WL 2937843, at *8 (E.D. Mich. July 24, 2008) (unpublished); *cf. White,* 451 F.2d at 1226 (holding that "the refusal of the [court] to appoint substitute counsel on the eve of the trial" is not improper); *Edsall v. Lazaroff,* 229 F.3d 213 (table), No. 99-3128, 2000 WL 263273, at *2 (6th Cir. Mar. 10, 2000) (unpublished), *cert. denied,* 531 U.S. 842 (2000).

The record also establishes that the trial court made an adequate inquiry into the matter, and determined that counsel was well-prepared for trial and that petitioner's own inaction had created the last-minute situation giving rise to the motion. Although petitioner's counsel mentioned difficulties and differences he had with petitioner regarding the handling of the case, the record does not reveal that any conflict they had was so great that it resulted in a total lack of

communication preventing an adequate defense.  Upon weighing all the factors, the trial court certainly acted well within its discretion to decide in favor of the public's interest in the prompt and efficient administration of justice.

Accordingly, in sum, the undersigned concludes that the trial court's decision to deny petitioner's requests for continuance and new counsel was reasonable and does not trigger concerns that petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel.  Petitioner, therefore, is not entitled to relief based on the claims alleged in Ground Four of the petition.

### D.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Five Challenging His Consecutive Sentences

In Ground Five of the petition, petitioner alleges that the trial court erred when it imposed consecutive sentences for the aggravated burglary and kidnapping offenses, because his total aggregate sentence exceeded the maximum sentence for either offense.  (Doc. 3, p. 21).  This claim lacks merit.

To the extent petitioner alleges the aggregate sentence was imposed in violation of state law, his claim is not cognizable in this federal habeas proceeding.  *See, e.g., Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993); *see also* 28 U.S.C. § 2254(a); *Estelle,* 502 U.S. at 67-68; *Pulley,* 465 U.S. at 41 (1984).  Moreover, to the extent petitioner contends in his "traverse" brief that the consecutive sentences were imposed in violation of his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court recently held that consecutive sentencing decisions do not trigger Sixth Amendment *Blakely* concerns.  *See Oregon v. Ice,* 129 S.Ct. 711 (2009).

Accordingly, petitioner is not entitled to relief based on the sentencing error claim alleged in Ground Five of the petition.

### E.  Petitioner Procedurally Defaulted The Claims Alleged In Grounds Six And Ten, And Is Not Entitled To Relief  Based On The Ineffective Assistance Of Appellate Counsel Claim Alleged As "Cause" For His Procedural Default

In Ground Six of the petition, petitioner claims that he was denied a fair trial due to the prosecutor's misconduct during trial.  (Doc. 3, p. 21).  He alleges in Ground Ten that his non-minimum sentences are void under the authority of *Blakely v. Washington*, 542 U.S. 296 (2004).  (*Id.,* p. 29; *see also* Doc. 16, p. 20).

Petitioner procedurally defaulted these claims because he raised them for the first time in his application for reopening of the appeal only as examples of ineffectiveness by his appellate counsel.  (*See* Doc. 11, Ex. 17).  Although the Ohio Court of Appeals found the ineffective assistance of appellate counsel claims were barred from review under Ohio's *res judicata* doctrine, the doctrine may not be applied to preclude review of such claims that are properly presented in a timely reopening application under Ohio R. App. P. 26(B).  *See State v. Davis,* 894 N.E.2d 1221 (Ohio 2008).  Because ineffective assistance of appellate counsel may constitute "cause" for a procedural default, *see Murray v. Carrier,* 477 U.S. 478,

488 (1986),[13] the undersigned will address the merits of the underlying defaulted claims.

1. Ground Six:  Prosecutorial Misconduct.

In his reopening application, petitioner claimed that his appellate counsel was ineffective in failing to raise a prosecutorial misconduct claim as an assignment of error on direct appeal.  (*See* Doc. 11, Ex. 17, p. 7).  Petitioner specifically challenged the propriety of certain remarks made by the prosecutor during opening statements, petitioner's cross-examination, and closing rebuttal argument.  (*Id.,* pp. 8-12).  The same claim has been alleged in Ground Six of the instant petition.  (*See* Doc. 3, pp. 21-26).

The scope of federal habeas corpus review of petitioner's allegations of prosecutorial misconduct is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors.  *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974).  Although preliminarily the court must determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation.  *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986).  Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

Where, as here, no specific constitutional right is alleged to have been infringed by the prosecutor, petitioner's allegations concern ordinary trial error, which will not amount to a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process."  *Donnelly,* 416 U.S. at 642-43; *see also Darden,* 477 U.S. at 181 ("it 'is not enough that the prosecutor's remarks were  undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process).

The due process inquiry involves an assessment of the "probable effect [of the prosecutor's alleged misconduct] ... on the jury's ability to judge the evidence fairly" when viewed within the context of the entire trial.  *United States v. Young,*

---

[13]  *See also Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 668 (6th Cir.) (*per curiam*), *cert. denied,* 546 U.S. 1017 (2005).

470 U.S. 1, 12 (1985). Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.[14]

In addition, another factor must be considered given that some of the prosecutor's challenged comments were made in response to defense counsel's closing argument. In assessing whether prejudicial error occurred in this "invited response" context, the court "must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Henry,* 545 F.3d 367, 381 (6th Cir. 2008) (quoting *Young,* 470 U.S. at 12). If found that the prosecutor's remarks were indeed "'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Id.* (quoting *Young,* 470 U.S. at 12-13).[15]

---

[14]  *See also United States v. Henry,* 545 F.3d 367, 376 (6th Cir. 2008); *Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004)), *cert. denied,* 549 U.S. 1264 (2007); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

[15]  In *Henry,* the Sixth Circuit stated: "Although '[a] governmental attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence,' the government may attempt to explain why, based on the facts, that witness's testimony is honest after the same has been attacked by the defense." *Henry,* 545 F.3d at 379 (quoting *United States v. Hurst,* 951 F.2d 1490, 1502 (6th Cir. 1991) (in turn citing *Young,* 470 U.S. at 8), *cert. denied,* 504 U.S. 915 (1992)); *cf. Hinkle v. Randle,* 271 F.3d 239, 245-46 (6th Cir. 2001) ("[w]hile the prosecutor's [rebuttal] remarks had the effect of bolstering the reliability of DNA evidence in general, they came in response to the defense counsel's invitation to comment on the state of the accuracy and reliability of DNA evidence").

Finally, even if it is determined that constitutional error occurred, federal habeas relief may not be granted unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).  Petitioner must meet the *Brecht* standard before he may obtain federal habeas relief based on any constitutional error committed by the prosecutor as alleged herein. *Cf. Gordon v. Kelly*, 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **12 (6th Cir. Feb. 1, 2000) (unpublished); *Hensley v, McGinnis,* 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999) (unpublished).

Turning to the specific conduct challenged in the instant case, the undersigned is convinced upon review of the record that petitioner's prosecutorial misconduct claim lacks merit, and therefore, petitioner's appellate counsel was not ineffective in failing to assert the claim as an assignment of error on direct appeal.

First, petitioner cites as an example of prosecutorial misconduct the portion of the prosecutor's opening statement referring to the victim's prospective testimony, which petitioner claims contained "misstatement[s] amounting to inadmissible hearsay."  (Doc. 3, p. 22).  The undersigned has reviewed the challenged remarks and finds that any misstatements that were made by the prosecutor about the victim's prospective testimony concerned insignificant details that would have had no impact on the jury's verdicts.  (*See* Doc. 11, Ex. 29, Tr. 261-62).  Moreover, as both the trial court and prosecutor emphasized to the jury (*see id.,* Tr. 259-60), counsels' opening statements did not constitute evidence, and therefore, could not have triggered any concerns about the improper admission of hearsay testimony.

Second, petitioner claims that during petitioner's cross-examination, the prosecutor improperly conveyed his "personal opinion" about petitioner's veracity as a witness.  (Doc. 3, p. 22).  Upon review of the record of petitioner's cross-examination (*see* Doc. 11, Ex. 29, Tr. 458-473), the undersigned could discern no impropriety by the prosecutor with respect to the questions that were asked or the

answers that were elicited.[16]   Contrary to petitioner's contention, although the prosecutor sought to undermine petitioner's credibility on cross-examination, he did not express his "personal opinion" about petitioner's veracity at any point during the cross-examination.

Finally, petitioner challenges three statements that were made by the prosecutor during rebuttal closing argument.  (Doc. 3, p. 23).  Petitioner first challenges the prosecutor's comments asking the jury "for a second, to be a burglar."  The statement, which was isolated, was not inflammatory and "did no more than [attempt to] 'right the scale'" in response to defense counsel's statements in closing argument suggesting that the victim had "staged" the crime scene.  (*See* Doc. 11, Ex. 30, Tr. 515-16, 530-31).

Petitioner next challenges remarks made by the prosecutor suggesting to the jury that the victim could have reasonably believed at the time of the incident that petitioner was going to kill him.  The remark was isolated, and was made not to inflame the jury but to counter defense counsel's attempts to undermine the victim's credibility by implying during [the victim's] cross-examination [that] if [the victim] was bound up so tightly why didn't he try and wriggle out earlier and go and run for help."  (*See id.,* Tr. 535).  It is highly unlikely that the jury would have been misled or inflamed by that one passing remark to convict petitioner on the basis of prejudice rather than the evidence.

The third statement by the prosecutor suggesting that petitioner had a weapon when he attacked petitioner is the most concerning because no evidence

---

[16]  Here, the prosecutor did ask petitioner a few times whether the victim had lied or was "incorrect" about certain facts given petitioner's testimony significantly contradicting the victim's version of events.  (*See* Doc. 11, Ex. 29, Tr. 467-68).  Petitioner cited cases in his reopening application in support of the argument that this line of questioning was improper.  (*See* Doc. 11, Ex. 17, p. 12).  However, where as here, a witness's testimony squarely contradicts other witnesses' version of events, the prosecutor may ask the witness whether his testimony "necessarily means the testimony of other witnesses is untrue."  *See United States v. Bustos,* 16 F.3d 1221 (table), Nos. 93-1203 & 93-1204, 1994 WL 47785, at **5 (6th Cir. Feb. 15, 1994) (*per curiam*) (unpublished) (citing *United States v. Bryant,* 770 F.2d 1283, 1291 (5th Cir. 1985), *cert. denied,* 475 U.S. 1030 (1986)).  In any event, even assuming the three questions that were asked of petitioner about the victim's veracity were improper, the undersigned finds that they had little if any prejudicial effect or influence in determining the jury's verdicts.  *Cf. United States v. Washington,* 60 F.3d 829 (table), No. 94-5914, 1995 WL 408128, at **3 (6th Cir. July 10, 1995) (*per curiam*) (unpublished) (and cases cited therein), *cert. denied,* 516 U.S. 971 (1995).

was introduced at trial to establish that fact. (*See id.,* Tr. 537). However, defense counsel objected to the comment, and the matter was rectified immediately by the prosecutor, who conceded that Becker had "never said that a weapon was used," and by the trial court, which provided a curative instruction and added that "[i]t is clear, at least in my understanding, there was not a weapon used." (*See id.,* Tr. 537-38).

Accordingly, in sum, the undersigned concludes that the prosecutorial misconduct claim alleged in petitioner's application for reopening of the direct appeal and in Ground Six of the petition lacks merit. Petitioner's appellate counsel was not ineffective in failing to assert the procedurally-defaulted claim as an assignment of error on direct appeal.

2. Ground Ten: *Blakely* Claim.

In his application for reopening of the direct appeal, petitioner contended that his appellate counsel was ineffective in failing to raise the claim alleged in Ground Ten of the instant petition–i.e., that petitioner's sentence to non-minimum prison terms without notice or jury determination of enhanced penalty factors is "void under the authority of [*Blakely*]" and the Supreme Court of Ohio's decision in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), applying *Blakely* to Ohio's sentencing statutes. (*See* Doc. 3, p. 29; Doc. 11, Ex. 17, p. 16).

As respondent has pointed out in the return of writ (*see* Doc. 11, Brief, p. 36), a review of the sentencing transcript reveals that petitioner's sentences were based not only on findings under provisions of Ohio's sentencing statutes, which ultimately were declared unconstitutional and severed in *Foster* in light of *Blakely,* but in large part because of petitioner's prior criminal record, which included convictions resulting in prison terms. (*See id.,* Ex. 31, Tr. 608-10).

*Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000), is the seminal decision leading to *Blakely* and its progeny, which recognized that the Sixth Amendment right to a jury trial extends to sentencing determinations. In that case, the Supreme Court held that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that the defendant is guilty beyond a reasonable doubt of any fact, *other than the fact of a prior conviction*, which increases the penalty for a

crime beyond the prescribed statutory maximum.  *Id.* at 490 (emphasis added).[17]

Thereafter, in *Blakely,* 542 U.S. at 303-04, the Supreme Court clarified that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," and "not the maximum sentence a judge may impose after finding additional facts."  (Emphasis in original).  In so ruling, the Court upheld the exception established in *Apprendi* specifically allowing the sentencing court to consider prior convictions without having to resubmit the fact of those convictions to the jury.  *Id.* at 301; *see also Warren v. Warden, Noble Corr. Inst.,* Case No. 1:06cv534, 2008 WL 1732976, at *5 (S.D. Ohio Apr. 10, 2008) (Barrett, J.) (unpublished) (holding that the petitioner's sentence could be enhanced by the court without violating *Blakely* because his "prior conviction falls under the exception to *Apprendi* [] and *Blakely*"); *Parker v. Moore*, Case No. 1:07cv248, 2008 WL 2323780, at *1 (S.D. Ohio June 3, 2008) (Spiegel, S.J.) (unpublished) (a sentencing court's "reliance on a prior conviction not proved to a jury does not violate *Blakely* because the United States Supreme Court created an exception when it decided *Apprendi*").[18]

In *State v. Lowery*, 826 N.E.2d 340, 351-52 (Ohio Ct. App. 1 Dist. 2005), the state appellate court presiding over petitioner's appeal held that a *Blakely* violation amounted to harmless error because the trial court gave alternative bases

---

[17] The exception created in *Apprendi* for prior convictions apparently was derived from prior Supreme Court precedents.  *See, e.g., Jones v. United States,* 526 U.S. 227, 243 n. 6 (1999) ("under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt"); *Almendarez-Torres v. United States,* 523 U.S. 224, 243-44 (1998) (holding that recidivism does not qualify as an element of the crime to be proven beyond a reasonable doubt although it may be employed as a means to enhance a defendant's maximum penalty); *Oyler v. Boles,* 368 U.S. 448, 451 (1962) ("[T]he constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge.").

[18] *Cf. United States v. Richardson,* 437 F.3d 550, 555 (6th Cir. 2006) ("controlling law, both before and after [*United States v. Booker,* 543 U.S. 220 (2005)], counsels that a judge can make factual findings about a defendant's prior convictions without implicating the Sixth Amendment") (and cases cited therein); *Bruley v. Curley*, No. 2:09cv11, 2009 WL 596528, at *2-3 (W.D. Mich. Mar. 6, 2009) (unpublished) (holding that an enhanced sentence under state law based on the petitioner's three prior felony convictions was "a fact that need not be found by a jury" under *Blakely*).

for imposing the maximum sentence, and one such basis included the defendant's prior convictions which fell within the *Apprendi/Blakely* exception.

Similarly here, the trial judge relied in large part on petitioner's prior criminal convictions when sentencing him to non-minimum prison terms. Therefore, petitioner is unable to prevail on any claim that his sentence is void under *Blakely* and *Foster.  See, e.g., White v. Moore,* No. 3:07cv26, 2008 WL 4425911, at *1, 7 (S.D. Ohio Sept. 25, 2008) (Rice, J.; Ovington, M.J.) (unpublished) (petitioner's "sentence did not violate *Blakely* because the sentencing judge based [the] sentence in part on [the petitioner's] prior convictions – a factor that need not be submitted to a jury under *Blakely*").[19]

Accordingly, in sum, the *Blakely* claim alleged in petitioner's application for reopening of the direct appeal and in Ground Ten of the instant petition lacks merit.  Petitioner's appellate counsel, therefore, was not ineffective in failing to assert the procedurally-defaulted claim as an assignment of error on direct appeal.

---

[19] *See also Brown v. Moore,* No. 4:07cv575, 2009 WL 347760, at *3, 11-12 (N.D. Ohio Feb. 10, 2009) (unpublished) (in upholding the non-minimum sentence imposed on an offender found to have previously served a prison term, the district court held that the sentencing judge's additional finding that the offender posed the greatest likelihood of committing future crimes "does not violate *Blakely* because such a finding was not necessary to impose a sentence beyond the statutory minimum"); *Brooks v. Eberlin,* No. 4:07cv2162, 2008 WL 5455383, at *5-6 (N.D. Ohio Dec. 31, 2008) (unpublished) (rejecting the magistrate judge's determination that the trial court had violated *Blakely* when it imposed the maximum sentence based on the petitioner's prior record as well as the fact that the petitioner "showed no remorse;" in so ruling, the district court agreed with respondent that the additional finding regarding the petitioner's lack of remorse was "superfluous because the sentencing court's consideration of petitioner's criminal history and his failure to respond favorably to previously-imposed sanctions were sufficient by themselves to support" the enhanced penalty); *Elder v. Berghuis,* No. 1:05cv780, 2009 WL 2185483, at *10-11 (W.D. Mich. Feb. 5, 2009) (Report & Recommendation) (unpublished) (in rejecting the petitioner's claim that his enhanced sentence based on his prior convictions violated *Blakely*, the court stated: "[E]ven if the trial court is determined to have engaged in fact-finding beyond simply determining that Petitioner had previously been convicted of a felony, the result in the same."), *rejected in part on other grounds,* __ F.Supp.2d __, 2009 WL 2185482 (W.D. Mich. July 21, 2009) (to be published).

**F. Petitioner Is Not Entitled To Relief Based On The Ineffective Assistance Of Trial Counsel Claims Alleged In Grounds Seven Through Nine Of The Petition, Which Are Waived And/Or Lack Any Record Support**

In Ground Seven of the petition, petitioner alleges that he was denied his constitutional right to "full and fair discovery" essentially because his trial counsel was ineffective in failing to file a motion to quash the indictment and a motion for the production of favorable evidence, as well as in failing to interview key witnesses who would support an alibi defense. (Doc. 3, p. 26). In Ground Eight of the petition, petitioner reasserts the claim challenging his trial counsel's effectiveness based on counsel's failure to interview or call alibi witnesses to testify on his behalf at trial. (*Id.,* p. 27). In Ground Nine of the petition, petitioner contends that his appellate counsel was ineffective in failing to raise a third ineffective assistance of trial counsel claim stemming from counsel's failure to object to the exclusion of African-Americans from the jury panel. (*Id.,* p. 28).

Petitioner did not raise the ineffective assistance of trial counsel claims alleged in these three grounds for relief to the state courts on direct appeal. Instead, he asserted them all in his application for reopening of the appeal as examples of ineffectiveness by his appellate counsel. (*See* Doc. 11, Ex. 17). He also asserted the claim alleged in Ground Eight and a portion of Ground Seven, stemming from counsel's purported failure to interview and call alibi witnesses, in his *pro se* post-conviction petition filed with the trial court in August 2006, during the pendency of the direct appeal proceedings. (*See id.,* Ex. 14).

As an initial matter, the undersigned finds that petitioner has waived the ineffective assistance of trial counsel claim alleged in Ground Eight and a portion of Ground Seven stemming from counsel's purported failure to interview and call alibi witnesses. The Ohio Court of Appeals reasonably determined in the reopening proceeding that appellate counsel did not violate any duty in failing to raise the claim on direct appeal, because the claim was dependent on evidence outside the record and thus should have been advanced in a petition for post-conviction relief. (*See* Doc. 11, Ex. 19). Although petitioner did in fact pursue state post-conviction relief based on such claim, he committed a procedural default by failing to pursue an appeal in the state courts from the trial court's September 5, 2006 decision denying the post-conviction petition. (*See id.*, Exs. 16 & 25).

In recognition of the equal obligation of state courts to protect the

constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  The claims must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If a petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived.  *See O'Sullivan,* 526 U.S. at 847-848;  *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default when he did not appeal the trial court's September 5, 2006 decision denying post-conviction relief. By thus failing to provide the state's highest court with an opportunity to address the alleged constitutional error on the merits, petitioner has waived the ineffective assistance of trial counsel claim alleged in Ground Eight and a portion of Ground Seven unless he has shown "cause" for his default and actual prejudice as a result of the alleged error, or that failure to consider the constitutional claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural default. Nor has he established that failure to consider the constitutional claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir.) (*per curiam*), *cert. denied,* 543 U.S. 989 (2004); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). To establish such a claim, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence ... that was not presented at trial." *Schlup,* 513 U.S. at 324, 327. The exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321. Petitioner has made no such showing in this case. Although petitioner has generally contended since the first day of his jury trial in January 2006 that there are alibi witnesses who would testify on his behalf, he has yet to come forward with any evidence from prospective witnesses to support this defense theory.

With respect to petitioner's remaining ineffective assistance of counsel claims alleged in Grounds Seven and Nine, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the issues that were raised by petitioner in his application for reopening of the direct appeal. Specifically, the court found that petitioner's appellate counsel was not ineffective in failing to raise the underlying ineffective assistance of trial counsel claims on direct appeal because the "appropriate vehicle" for presenting such claims, which were dependent for their resolution on evidence outside the record, was in a post-conviction petition. (*See* Doc. 11, Ex. 19).

Petitioner has never pursued state post-conviction relief as advised by the Ohio Court of Appeals based on the underlying ineffective assistance of trial counsel claims. However, at this late juncture, the undersigned finds that it would be futile for petitioner to seek such relief. Petitioner has never attempted to substantiate his conclusory allegations. For instance, he has not provided any explanation as to why his counsel should have filed a motion to quash the indictment on his behalf; nor has he cited or provided the court with any evidence to support his claims that his counsel failed to adequately pursue discovery or that prospective jurors were improperly excluded from the jury panel on the basis of race.

40

Indeed, as respondent has pointed out in the return of writ (*see* Doc. 11, Brief, pp. 34-35), the record reveals that discovery materials were requested by defense counsel and provided to him on December 1 and 7, 2005, and that the State exercised only one peremptory challenge during the jury selection process without anyone mentioning or discussing any concerns based on the race of that particular prospective juror. (*See id.,* Ex. 25; Ex. 28, Tr. 83-90, 112-14, 164-69, 189; Ex. 29, Tr. 365-68). In the absence of any evidence in the record even remotely suggesting that petitioner's remaining claims can be substantiated or have any factual bases, the undersigned concludes that the claims should be dismissed as meritless.

## G. Petitioner's Is Not Entitled To Relief Based On The Ineffective Assistance Of Appellate Counsel Claim Alleged In Ground Eleven Of The Petition

In Ground Eleven of the petition, petitioner alleges that his appellate counsel was ineffective because she did not "present and argue the federal constitutional theory of each respective assignment of error raised in the direct appeal." (Doc. 3, p. 30). The undersigned has addressed herein each of petitioner's claims that were raised on direct appeal based on the federal constitutional theories that either were or could have been presented by appellate counsel, and has found each such claim to be lacking in merit. Petitioner's appellate counsel, therefore, was not ineffective to the extent she did not present or argue the meritless federal constitutional theories on direct appeal. *See Strickland v. Washington,* 466 U.S. 668, 687-88, 694-95 (1984).

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its

procedural ruling.[20]  A certificate of appealability also should not issue with respect to the claims alleged in the petition, which were addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  9/29/09                          s/Timothy S. Black
         cbc                          Timothy S. Black
                                      United States Magistrate Judge

---

[20]  Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the procedurally-defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION
_____

Thomas Sheppard,
     Petitioner

     vs                            Case No. 1:08cv298
                                     (Spiegel, S.J.; Black, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).